NEW-YORK PRACTICE REPORTS. 507

In the matter of Van Tine agt. Nims.

## SUPREME COURT.

### In the Matter of the Application of John Van Tine for an Attachment against Theodore T. Nims.

It is very doubtful whether the common council of the city of New-York have any power to authorize any committee to inquire into the conduct or action of any person not a member of either branch of the city government—especially where such conduct may amount to a crime.

Where a special committee of the common council, appointed "to investigate the action of the committee on streets, who had under consideration the widening and improving of Reade-street," made inquiries of a witness before them, in reference to his own acts, with individuals. other than the committee,

*Held*, that the special committee had no power to make such inquiries; they were not proper and pertinent questions within the meaning of the statute.

The statute has enlarged the grade of offence of *bribery*, at common law, from misdemeanor to a *felony*.

The law is well settled, that a witness is *privileged* from answering any question which will have a tendency to expose him to any kind of punishment upon a *criminal* charge.

And the witness must himself be the judge, how far the answer may tend to criminate him. But the witness may be compelled to state the *grounds* upon which he refuses to answer.

*Special Term, March,* 1855.

Order to show cause, &c.

M. V. B. Wilcoxson, *for relator.*
J. B. Phillips, *for respondent.*

Whiting, Justice. Mr. Nims, a witness on a proceeding before a special committee of the common council, appointed "to investigate the action of the committee on streets, who had under consideration the widening and improving of Reade-street," declined to answer to several questions propounded to him.

He is before me on an order to show cause why he should not be compelled to answer those questions.

In the matter of Van Tine agt. Nims.

It is alleged on his part that he is not bound to answer—

1st. Because the subject of inquiry is not within the scope of the authority conferred upon the special committee.

2d. That the witness is privileged from answering, on the ground that the answers might criminate him.

The only authority conferred upon the special committee is to inquire into the action of the street committee. The authority conferred upon the special committee is special and limited, and they cannot go beyond the duty imposed. It is very questionable whether the common council have any power to authorize any committee to inquire into the conduct or action of any person not a member of either branch of the city government, especially when such conduct may amount to a crime. In this case, however, Nims answered every question put to him as to the action of the street committee, or any of its members, in relation to the widening and improving of Reade-street.

All the questions, to which answers are now sought from the witness, relate to his own acts with individuals other than the committee. These inquiries the special committee have no power to make; they are not "proper questions" within the meaning of the statute. To be proper, they must be pertinent to the investigation and connected with the subject referred, and relate to matters within the power of the common council to inquire about.

The act "to amend the existing law relating to bribery" makes the offer to furnish, in whole or in part, any money, goods, right in action, or other property, or anything of value, or any pecuniary or other individual advantage, present or prospective, to any member of the common council, with an intent to influence his vote or action upon any question, matter, cause, or proceeding pending, or which may by law be brought before him in his official capacity, a felony.

It also declares that "every person who shall knowingly bear or convey any such gift, gratuity, or proposal, or shall in any manner negotiate between any other persons for any act in violation of the preceding section, shall, upon conviction, be

punished in like manner, and to the same extent," as the prin-cipals.

If Nims was in any way connected as an actor in offering to any of the persons named in the act, a bribe, or in any way negotiating between any other persons to such end, he would be guilty of an offence under this act. Bribery at the common law was a misdemeanor; but this act has enlarged the grade of the offence, and made it a felony.

The law is too well settled to need the quotation of authori-ties to show that a witness is privileged from answering any question which will have a tendency to expose him to any kind of punishment upon a criminal charge. When the disclosure he may make may be used against him, however remote the fact, if it may prove even one link in the chain of evidence, which, when others are made known, convict, or have a tend-ency to convict of a crime, he is protected by the law from an-swering the question.

"It is certainly not only a possible case," says one of the most enlightened jurists of any age, "that a witness, by dis-closing a single fact, may complete the testimony against him-self, and, to every effectual purpose, accuse himself entirely, as he would by stating every circumstance which would be required for his conviction. That fact of itself would be unavailing, but all other facts without it would be insufficient; while that re-mains concealed in his own bosom he is safe; but draw it from thence, and he is exposed to prosecution."

It is urged that the witness did not put his refusal to answer upon the ground that the answers might tend to criminate him, and that if he had he is not the judge of that, but that the tribunal before which he is examined must decide that question. It is enough to say, that the witness was not asked to state the grounds on which he refused to answer. If the question had been put he would probably have answered it; if he refused, he might have been compelled to have stated the shield the law gives him as the reason for his refusal. The witness, however, must himself be the judge, how far the answer may tend to criminate him. The court or tribunal could not know, or be

In the matter of Van Tine agt. Nims.

competent to decide, whether it would or would not—unless the answer, no matter which way, must, from the very nature of things, be wholly indifferent. All that the court could do would be to see that the answer might have that effect; if it might, the privilege cannot be taken from the witness. If the answer, under no possible circumstance, could have any such tendency, the witness must answer.

In the case before me, it it is very clear that affirmative answers to the questions propounded might lead to the development of a chain of evidence that might lead to his conviction of an offence within the law of the act against bribery. The reasons of his refusal to answer are so palpable upon the face of the questions, that the special committee did not (probably for that reason) deem it necessary to ask them to be stated.

It was urged before me, also, that unless such witnesses can be compelled to give evidence, the offence of bribery under the act cannot be reached. That is an argument to be addressed to the law-making power. When the legislature in its wisdom shall relieve such witnesses from all criminal and penal responsibility upon giving the evidence, then, and not till then, can the courts take from the witness the safeguards with which the constitution of the state, and repeated judicial decisions, have erected around them.

On both grounds the objections are well taken, and the order to show cause must be discharged.